In the Matter of the Claim of ARTHUR VANCE, Respondent, against HUT NECKWEAR Co., INC., et al., Respondents; S. DENNIS, INC., et al., Appellants.

WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 30, 1952.

*Carlton A. Walls* for appellants.

*Bernard Katzen, George J. Hayes* and *Victor Fiddler* for Hut Neckwear Co., Inc., and another, respondents.

*Markhoff & Isaacson* for claimant-respondent.

HALPERN, J. The claimant was a traveling salesman; he was injured on October 17, 1949, as the result of a collision between his automobile and the automobile of a third party while traveling from Denton, Texas, to Wichita Falls, Texas.

The claimant sold two lines of merchandise: men's sportswear manufactured by the appellant S. Dennis, Inc. (hereinafter referred to as Dennis) and neckwear manufactured by the respondent The Hut Neckwear Co., Inc. (hereinafter referred to as Hut). Both Dennis and Hut were New York corporations maintaining their principal places of business in the city of New York.

The Workmen's Compensation Board determined that, at the time of the accident, the claimant was employed by both Dennis and Hut in New York State employment and that the accidental injury arose out of and in the course of the employment. Hut has not appealed from the determination.

Dennis has appealed from the determination and raises three questions: (1) whether the claimant was an employee of the appellant; (2) whether the employment was located in New York State; (3) whether, at the time of the accident, the claimant was engaged in the service of both the appellant Dennis and the respondent Hut or whether he was engaged solely in the service of the respondent Hut.

The claimant's connection with the appellant Dennis began in May, 1949, when he was brought to the office of Dennis in New

York City by a friend of his, one Melvin Silverman, who was the sales representative of Dennis in the States of Texas, Louisiana, Oklahoma and Arkansas. The claimant and Silverman were friends of long standing and for more than a year Silverman had been urging the claimant to join him in selling the Dennis line.

It is undisputed that the claimant was hired as a salesman in the office of appellant in May, 1949, but the appellant contends that the claimant was hired by Silverman as his employee and that the appellant had no direct relationship with the claimant.

The relevance of this argument depends upon the relationship between the appellant and Silverman. That is the first subject of our inquiry. Silverman operated under a written contract with the appellant dated March 10, 1949, which referred to the appellant as the " Principal " and Silverman as the " Salesman ". Under the contract, the principal " appointed " the salesman to solicit orders for the sale of its merchandise in the enumerated States. The salesman was given an exclusive right to the territory assigned to him; the contract provided that the salesman was to receive a commission " on all business accepted and shipped into the Salesman's territory " of not less than 6% of the net selling price. Appellant's counsel argues that Silverman was an " agent ", apparently intending to indicate by that term that Silverman was an independent contractor rather than an employee of the appellant. However, at the hearing, appellant's counsel did not challenge the referee's comment that " it is absolutely undisputed that this man, Silverman, was an employee of the concern ".

The agreement avoids the use of the words " employ " and " employee " but, on the other hand, it does not attempt to characterize the relationship as that of an independent contractor; in any event, the language of the agreement is not controlling if the realities of the situation dictate a different conclusion (*Matter of Morton*, 284 N. Y. 167; *Matter of Gordon* v. *New York Life Ins. Co.*, 300 N. Y. 652).

Silverman came to be known as the appellant's southwestern regional manager. He was clearly subject to the supervision and control of the company. The conclusion that he was an employee of the appellant is inescapable (*Matter of Gordon* v. *New York Life Ins. Co.*, *supra*).

The arrangement with the claimant agreed upon at the meeting in the appellant's office in New York in May, 1949, was

entirely oral and to some extent it was ambiguous. Probably the parties themselves did not take the trouble to think through all the legal implications of the arrangement. The employment of the claimant to share the southwestern territory was undoubtedly suggested by Silverman, but the final approval rested with the appellant. Silverman agreed to assign to the claimant part of his territory, namely, the western part of Texas and Oklahoma, and agreed that the claimant would receive a commission of 6% of the net sales (apparently the same commission as that received by Silverman) and a drawing account of not less than $75 per week against commissions. The claimant and Silverman used their own cars and paid their own traveling expenses. The claimant was given a brief '' orientation '' course with respect to the Dennis merchandise in the appellant's New York office at the time he was hired. He was given a line of samples and he was entrusted with such secret or confidential information about the Dennis merchandise as the appellant's officers thought would be helpful to him in selling the line.

The claimant sent the orders which he obtained directly to the appellant's office in New York and the appellant's executives corresponded directly with him. However, the appellant continued to carry the entire territory on its books as Silverman's territory; it made no separate record of the claimant's orders or the commissions earned thereby; it included them all in Silverman's account; remittances for the commissions earned were sent directly to Silverman and Silverman, in turn, paid the claimant his commissions. The appellant did not carry the claimant's name on its payroll records; the claimant's drawing account was paid by Silverman out of the commissions received by him. Silverman was regarded as the sales representative or sales manager for the southwestern territory and the claimant was regarded as a salesman operating in a part of the territory under Silverman's supervision.

As tending to show that the claimant was Silverman's employee, the appellant argues that the advances paid by Silverman might exceed the commissions earned by the claimant and that, upon the termination of the claimant's employment, Silverman might have to bear a loss on that account. This argument is entirely speculative; the parties had apparently never given consideration to that possibility; the commissions had been more than adequate to cover the advances and they expected that to continue to be the fact. In this situation, no

substantial weight can be given, in determining the relationship between the parties, to the circumstance that Silverman paid the advances to the claimant.

The appellant also seeks to draw an inference in its favor from the circumstance that the claimant's orders and commissions were cleared through Silverman's account but the evidence showed that this was done to serve the appellant's bookkeeping convenience. The appellant's vice-president explained that it was simpler to treat each territory as a unit and to compute commissions on that basis and send the checks to the so-called regional sales representative or manager rather than to each salesman in the territory. Furthermore, State lines were usually followed in fixing the boundaries of each sales representative's territory. This facilitated the crediting of commissions since the salesmen were given credit not only for orders which they obtained personally, but also for orders which were sent in directly by customers located in the territory assigned. In the claimant's case, he was assigned a part of the State of Texas and the exact line of demarcation between Silverman's territory and the claimant's territory within the State was left open for Silverman and the claimant to work out between themselves. In this situation, it would have been highly inconvenient if the office staff of the appellant were required to determine, with respect to each order, whether it came from a customer in the claimant's territory or in Silverman's territory. This was an additional reason for clearing all the claimant's orders through Silverman's account.

Silverman testified that the claimant was not his employee, but that of the appellant and that, while he had hired the claimant, he had done so only with the appellant's approval.

The vice-president of the appellant testified that the claimant was at all times subject to the control of the appellant and that he could be discharged at any time that the appellant chose, regardless of Silverman's wishes. He testified flatly that "we considered him [the claimant] an employee of S. Dennis, Incorporated" and that "we were responsible for any dealings or arrangements that he made".

Upon this record, there was ample evidence to sustain the board's conclusion that the claimant was an employee of the appellant. The appellant's argument against that conclusion really rests upon its initial premise that Silverman was himself an independent contractor rather than an employee. Once that premise is rejected and it is found that Silverman was an employee of the appellant, there is nothing left to the appellant's

position. Even if we accept the appellant's contention that the claimant was hired by Silverman, rather than directly by the appellant, we have the simple case of an employee hiring an assistant or subemployee, with the consent and approval of his employer, to help to do the employer's work. An assistant so employed becomes an employee of the principal employer. It is well settled that this is true for the purpose of determining the common-law liability of the employer for the torts of the subemployee. (*Gleason* v. *Amsdell*, 9 Daly 393; Restatement, Agency, § 255; 57 C. J. S., Master and Servant, § 564, p. 280; 2 Am. Jur., Agency, §§ 200–206.) A fortiori, there is a direct employment relationship between the employer and the subemployee within the meaning of the Workmen's Compensation Law. (*Matter of Enright* v. *Asplundh Tree Expert Co.*, 297 N. Y. 452, affg. 271 App. Div. 847; see, also, 1 Larson on Workmen's Compensation Law, § 43.41, p. 628.)

If a company engaged in the sale of merchandise can insulate itself against compensation liability to the men selling its merchandise by simply adopting the device of having salesmen hired by regional sales representatives and having their orders cleared and their commissions paid through the representatives' accounts, an easy method of circumventing the policy of the Workmen's Compensation Law has been discovered. We need hardly say that the alluring prospect "which appellant has envisioned * * * is a mirage". (*Panhandle Pipe Line Co.* v. *Comm'n.*, 332 U. S. 507, 524.)

The second question raised by the appellant as to the location of the employment has, to a large extent, already been answered. The employment of the claimant was not at a fixed location outside the State of New York (*Matter of Cameron* v. *Ellis Constr. Co.*, 252 N. Y. 394; *Matter of Lewis* v. *Knappen Tippetts Abbett Eng. Co.*, 304 N. Y. 461, 465–466; *Matter of Baduski* v. *Gumpert Co.*, 277 App. Div. 591, appeal dismissed 302 N. Y. 702). The claimant was a resident of New York, he was hired in New York and he was sent out to the southwest to sell the appellant's merchandise. He sent his orders to the New York office and his commissions were paid from the New York office. There is a reference in the record to Silverman's having established an office in Dallas, Texas, about the time that he became a regional manager and the claimant was taken on as a salesman. This seems to have been no more than Silverman's personal headquarters. The claimant continued to send his orders directly to the New York office and the New York office

continued to correspond directly with the claimant, although it used the Dallas office as a mail address.

Claimant was a resident of Brooklyn when he was hired and he retained that residence throughout his employment. While traveling in Texas, he usually stopped overnight at the nearest large city; he did not live at any particular place but he had a room in Dallas where he and Silverman kept their samples and where the claimant occasionally slept on a weekend.

The evidence sustains the board's determination that the claimant's employment was a New York employment.

The remaining point is the one upon which the referee and the board differed. The referee had dismissed the claim against Dennis upon the ground that, at the time of the accident, the claimant was working solely for the respondent Hut. The board reversed this finding and found that, at the time of the accident, the claimant was working for both Dennis and Hut.

There is substantial evidence to support the board's determination. In his decision, the referee gave consideration only to the claimants first version of his activities on the day of the accident and disregarded the fact that the claimant had subsequently supplemented and modified that version in a way which justified the conclusion that he was working for Dennis as well as for Hut at the time of the accident.

It appears that in September, 1949, during the off-season in the sale of sportswear, claimant went to New York City and there entered into an agreement with the respondent Hut to sell its neckwear in the same territory in which he sold the Dennis sportswear. It was still in the off-season for the sale of sportswear on October 17th, when the accident occurred. The claimant testified that on the day of the accident, he had called on a customer in Denton, Texas, and obtained an order for Hut neckwear and then started out for Wichita Falls, Texas, where he intended to call upon a customer to solicit an order for Hut neckwear. On the way to Wichita Falls the accident occurred. The customer on whom the claimant intended to call in Wichita Falls was also a customer, in the appropriate season, for sportswear. Indeed, this was true of practically all of claimant's customers; they were men's stores which handled both sportswear and neckwear.

The claimant testified originally when his testimony was taken in Texas, while he was still hospitalized there, that during the period during which the accident occurred, he was devoting all his time to the sale of neckwear and that he did not have any

sportswear samples in his car. However, his recollection was refreshed by a statement reported to him as having been made by a State police officer, that he had found sportswear as well as neckwear samples in the claimant's automobile immediately after the accident. The claimant subsequently expressed the view that he had had some sportswear samples with him. Furthermore, he recalled that, after selling the Hut neckwear in Denton, he had called upon another customer in that town regarding the sale of Dennis sportswear, although he had not obtained any order at that time. Claimant also modified his earlier statement that he was then devoting all of his time to the sale of neckwear and he testified at the subsequent hearing that, while he was devoting most of his time to the sale of neckwear, he was also on the lookout for occasional orders for sportswear which might come up, even in the off-season.

The shift in the claimant's version of his activities raises a question of credibility, but his credibility was solely for the board to determine and the revised version cannot be said to be so lacking in substantiality as to leave the board's determination without a basis in substantial evidence.

It may be noted that the claimant had nothing to gain by involving Dennis as well as Hut in compensation liability since the total amount of his award would remain the same whether it was shared by the two employers or paid by one. Furthermore, the suggestion implicit in the claimant's later testimony that he was at all times engaged in building up or keeping up the good will of Dennis and in promoting the Dennis line seems to be in accord with the realities of the business situation. The claimant did not cease to be working for Dennis merely because the sale of sportswear was out of season, so long as in traveling through his territory, he continued to keep in contact with the customers from whom he expected to obtain orders for sportswear in the appropriate season.

The decision and award should be affirmed, with costs to the respondent Hut.

FOSTER, P. J., BREWSTER and BERGAN, JJ., concur.

Decision and award affirmed, with costs to the respondent Hut.