**William HACKER (Employee), Appellant,**

**v.**

**CITY OF POTOSI (Employer),**

and

**Hardware Mutual Insurance Company
(Insurer), Respondents.**

No. 48660.

Supreme Court of Missouri,

En Banc.

Nov. 13, 1961.

Rehearing Denied Dec. 11, 1961.

William B. Quinn and James K. Moran, St. Louis, for appellant.

Samuel Richeson, Dearing Richeson & Weier, Hillsboro, for respondents.

Raymond I. Harris, Harris, Fortus & Anderson, Clayton, for Municipal Police Chiefs Assn. and North St. Louis County Municipal Peace Officers Assn., amici curiae.

F. William Human, Jr., Ziercher, Tzinberg, Human & Michenfelder, Clayton, for St. Louis County League of Municipalities, amici curiae.

HYDE, Chief Justice.

Workmen's Compensation proceeding in which compensation was denied by the referee and the Commission. The circuit court judgment affirming the Commission was affirmed by the St. Louis Court of Appeals. (Hacker v. City of Potosi, 340 S.W.2d 166.) We ordered the case transferred under Sec. 10, Art. V, of the Constitution, V.A.M.S.

Claimant, whose regular employment was with the Brown Shoe Company, was employed by the City at $2.50 per hour as a part-time police officer to be on duty on Friday and Saturday nights—"sometimes go on at eleven and work until daylight and sometimes I'd go on at seven and work until about one o'clock." For this hourly pay, claimant furnished his own car. Claimant was a deputy sheriff of Washington County at the time he was employed and continued to be during his employment.

Claimant said before he was employed he was called into a meeting of the City Council, at which the Mayor "stated that the reason that they wanted me was because I did have a commission and I could go out in the county and bring in people that violated the law and that's why they wanted me as a police officer for the city."

About 1:30 A.M., on the night of his injury, the Chief of Police of the City, Virgil Sutton, was in claimant's car with him, parked on High Street which was also Highway 8. They saw a car, with California license plates, with one light out, go by at between 70 and 75 miles per hour, violating an automatic stop light. Chief Sutton said "let's get him" and claimant drove after the car, chasing it about a mile when it "turned off the highway down a small dirt road" which "led down to a small house." Claimant said: "[W]hen we got to the car it was empty, the doors were open and the lights were on, and we pulled up behind the car, got out of our car and Mr. Sutton walked up to the other car and looked inside and there was no one there, of course we could tell that when we drove up, and we walked around behind the car and I walked out and was shining my flashlight around and just as I brought the flashlight around I noticed there was a house there, I hadn't seen the house before, and just as I brought the flashlight around I saw a man on the porch and he shot, he shot me." It was shown that the place where the car was found was about 1,700 feet outside the city limits. Other facts and the findings and conclusions of the Commission are set out in the opinion of the Court of Appeals and we refer to it for these matters. In the findings of the Commission it is stated that claimant "approached the house" but the evidence, hereinabove set out, does not support that finding. Instead it shows that claimant was shot just as he brought his flashlight on the house which he had not seen before.

The Commission and the Court of Appeals decisions were based on the view that there was no causal connection between the work claimant was employed to do as a police officer of the city and his injury and therefore his injury did not arise out of his employment. It was also held that claimant was not injured in the course of his employment because he was acting beyond the scope of his employment in attempting to make an arrest outside the city limits. The Supreme Court of North Carolina expressed similar views in Wilson v. Town of Mooresville, 222 N.C. 283, 22 S.E.2d 907, 912, a case of a city officer pursuing a violator of speed laws beyond municipal boundaries into another town.

We have held that a police officer of a fourth class city (which Potosi was) has no authority to arrest without a warrant outside the city limits in nonfelony cases. (City of Advance ex rel. Henley v. Maryland Casualty Co., Mo.Sup., 302 S.W.2d 28, and authorities cited; as to arrest with warrant see Sec. 98.540; statutory citations are to RSMo and V.A.M.S.) Therefore, making an arrest outside the city limits under the circumstances of this case would not have been incident to claimant's employment with the city; and thus an injury received in making an arrest or attempting to make it could not be held to arise out of and in the course of his employment. It appears that this situation was recognized when claimant was employed because it seems to have been understood that only a deputy sheriff could go out in the county and bring in people and that one reason for his employment was to have an officer available who could make a lawful arrest outside the city limits. Therefore it must have been intended that if he went outside the city limits to make an arrest, he would be acting as a deputy sheriff under state laws and not as a police officer of the city.

However, in this case, claimant had not attempted to make an arrest when he was shot. He and the Chief were investigating the car which had been abandoned. Perhaps they only would have made an investigation of it for purposes of determining the identity of its owner as a basis for filing a complaint and obtaining a warrant. We

know of no reason why they would not have authority to do this. There may be many circumstances under which police officers might have duties which would require their presence outside city limits. (See Sec. 79.-380 authorizing fourth class cities to own and police certain installations and institutions within five miles of the city limits; see also Sec. 79.430 concerning cemeteries within three miles.) Perhaps it might be necessary to take prisoners properly in custody to a safer place of detention in another city, to recover or transport city property, or to aid in emergencies due to accidents, as in Village of Butler v. Industrial Commission, 265 Wis. 380, 61 N.W.2d 490, 493, where a village marshal went to the scene of a highway collision just outside the village limits. After calling the sheriff's office, he attempted to place a warning flare and was killed when struck by another car. Compensation was allowed on the theory that the marshal "must have deemed that an emergency existed which required the setting out of flares before officers of the sheriff's office would arrive." Therefore, the Supreme Court of Wisconsin held the finding that the marshal "at the time of his injury 'was performing service growing out of and incidental to his employment by the respondent [village] and arising out of his employment' is amply supported by the evidence in the case."

A policeman of a city of the fourth class is empowered by statute to serve a warrant issued by the mayor or police judge anywhere within the limits of the county. Sections 98.540 and 85.620. He is a proper person to apply for and obtain a warrant especially where the offense is committed in his presence. Sec. 98.530, see also S.Ct. Rules 37.07, 37.08, 37.09 and 37.46, V.A.M.R. Surely it would be within his duties to go beyond the city limits to investigate and establish the identity of the offender in order to obtain a warrant and thereafter make a lawful arrest. If the activities in which the claimant was engaged at the time he was shot were consistent with his duties as a city policeman, coverage under the Act should not be denied because the officer might have had a further purpose which if carried out could constitute an unlawful act not arising out of and in the course of the officer's employment as a city officer.

■ If claimant was attempting to make an arrest, without a warrant, he could have been acting lawfully only in his capacity as a deputy sheriff. However, if he was only making an investigation to determine ownership and identity he could have been acting lawfully as a city police officer. In Corp v. Joplin Cement Co., Mo.Sup., 337 S.W.2d 252, we recognized the doctrine of "dual purpose," in a case which depended upon whether an automobile trip, in which the claimant therein was killed, was undertaken for a strictly personal reason or was combined with a necessary business purpose of the employer. Likewise here we have a case in which claimant made a trip outside the city limits with his superior officer and at his direction and this trip properly could have been made for the purpose of determining the identity of the offending driver by proper means. (The chief of police could not properly have been there for any other purpose.) While claimant could have made it as deputy sheriff to arrest the driver without a warrant for violation of state laws in his presence, the evidence does not show that when he was shot he had attempted to make an arrest. Therefore, the issue should not be determined solely on the question of lack of authority to make an arrest, as a city policeman, when no arrest actually had been attempted. Our conclusion is that a proper purpose (to identify the offender) of claimant's employer, the city, was at least a concurrent cause of the trip; and that compensation should not be denied because of the possibility that claimant also could have had in mind his authority as a deputy sheriff to make an arrest without a warrant and perhaps at some later time in the trip might have attempted to do so. This view "is in keeping with the rule that the Workmen's Compensation Act should be liberally construed to effectuate its purposes." (Corp v. Joplin Cement Co.,

supra, 337 S.W.2d 1. c. 255.) For the reasons stated, we conclude the evidence shows that the employee was on a dual purpose mission, that his work created the necessity for the travel and that his injury arose out of and in the course of his employment. Therefore, the award denying compensation is not supported by competent and substantial evidence on the whole record.

The judgment of the circuit court affirming the final award of the Industrial Commission is reversed and the cause is remanded with directions to the circuit court to set aside its judgment and enter a new judgment reversing the award of the Industrial Commission and to remand the cause to the Industrial Commission for further proceedings consistent with the views expressed in this opinion.

All concur.