**MORRISON–KNUDSEN COMPANY, Inc.,
and Employers' Mutuals of
Wausau, Appellants,**

**v.**

**Gusta VEREEN, Jr., and Alaska Workmen's
Compensation Board, Appellees.**

**No. 610.**

Supreme Court of Alaska.

May 23, 1966.

Frank M. Doogan, Faulkner, Banfield, Boochever and Doogan, Juneau, for appellants.

Richard R. Cole, Fairbanks, for appellee Gusta Vereen, Jr.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

Appellants appeal from a compensation order entered by the Alaska Workmen's Compensation Board and subsequently affirmed by the superior court. In its order the Board found that appellant Gusta Vereen, Jr. (hereinafter referred to as claimant) sustained a compensable accidental injury which arose out of and in the course of his employment resulting in claimant's temporary total disability. The Board also concluded that an assessment of a 10% penalty against appellant Morrison-Knudsen Company, Inc. (claimant's employer) for failure to pay compensation was appropriate.

Appellants attack the Board's compensation order on the grounds that claimant failed to file a timely claim for compensation; that the Board's finding of temporary total disability is not supported by substantial evidence; and that there was no basis in the record for the assessment of a

10% penalty. Appellants' contentions will be separately treated.

## AS TO THE TIMELINESS OF CLAIMANT'S CLAIM FOR COMPENSATION

AS 23.30.100(a) of the Alaska Workmen's Compensation Act provides:

Notice of an injury * * * in respect to which compensation is payable under this chapter shall be given within 30 days after the date of such injury * * to the board and to the employer.

Limitation periods pertaining to notice of injury, such as that contained in our compensation act, have been held to possess the dual purpose of enabling

* * * the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury.[1]

No issue as to the timeliness of claimant's notice of injury is presented by this appeal. The question here is whether or not claimant timely filed a claim for compensation within the period prescribed by AS 23.30.-105(a). This section of our compensation act provides:

The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years after the employee has knowledge of the nature of his disability and its relation to his employment and after disablement. However, the maximum time for filing the claim in any event other than arising out of an occupational disease shall be four years from the date of injury * * * except that if payment of compensation has been made without an award on account of the injury or death, a claim may be filed within two years after the date of the last payment. It is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the injured employee has

---

1. 2 Larson, Workmen's Compensation § 78.20, at 253 (1961).

full right to claim as shall be determined by the board, time limitations notwithstanding.[2]

■ The purpose of AS 23.30.105(a)'s limitation as to the filing of a compensation claim is to "protect the employer against claims too old to be successfully investigated and defended." [3]

In the proceedings held before the Board, Morrison-Knudsen filed a motion to dismiss on the grounds of claimant's noncompliance with the provisions of AS 23.30.105 (a).[4] When claimant's application for compensation came before the Board for hearing on May 16, 1963, the Board took Morrison-Knudsen's motion to dismiss under advisement. The record discloses that thereafter the Board did not enter any order in regard to the subject motion to dismiss. In its Findings and Award, which were filed on February 18, 1964, the Board also failed to make any specific finding or reference to the employer's then pending motion to dismiss, although paragraph number eight of the Board's Findings and Award stated that "All issues of fact are resolved in favor of applicant."

On appeal, the superior court, on March 19, 1965, entered a Memorandum Opinion and Order which affirmed in all respects the Board's favorable determination of claimant's application for compensation. As to the issue under consideration the superior court concluded that claimant had timely complied with AS 23.30.105(a)'s mandate on two separate grounds. First, on the basis of several letters which had been introduced into evidence before the Board, the superior court determined that claimant had filed a claim for compensation within two years of the date of the employer's last payment of compensation to claimant. (Note: The evidence is undisputed that claimant sustained an accidental injury on July 14, 1960, and that subsequent thereto his employer voluntarily paid compensation until October 15, 1960.) Secondly, the superior court further concluded that claimant had filed a claim for compensation within two years after he first acquired "knowledge of the nature of his disability and its relation to his employment." [5]

2. Alaska's former compensation act provided in § 43-3-29 ACLA (1949) that:
   *Claims barred if not filed within two years.* Any and all claims for compensation hereunder shall be barred unless a claim for compensation shall be filed with the Industrial Board within two years after the injury, or, if death results therefrom, within two years after such death, after the injury was sustained, or, in the event of mental incapacity, within two years after the removal of such mental incapacity.
   In 1959 the legislature enacted a new compensation law. See SLA 1959, ch. 193. SLA 1959, ch. 193, § 12 became AS 23.30.105(a) upon codification. SLA 1962, ch. 42, § 6, amongst other changes, added the latent defect provision now contained in AS 23.30.105(a).

3. 2 Larson, Workmen's Compensation, supra note 1. Larson states at 254:
   Failure to file a claim for compensation within the statutory period cannot be excused by an argument that the employer was not harmed by the lateness of the filing. Like any statute of limitation, this one carries a conclusive presumption that a defendant is prejudiced by reason of the enhanced difficulty of preparing a defense.

4. AS 23.30.105(b) states that:
   Failure to file a claim within the period prescribed in (a) of this section is not a bar to compensation unless objection to the failure is made at the first hearing of the claim in which all parties in interest are given reasonable notice and opportunity to be heard.

5. The superior court, in its Memorandum Opinion and Order of March 19, 1965, explained its conclusions in regards to this dual basis for sustaining the Board in the following manner:
   The hard question is whether a claim was filed within two years of the date of last payment of compensation within the meaning of A.S. 23.30.105(a).
   The testimony shows claimant's attorney notified the Board on October 17th, 1960, that Mr. Vereen was claiming compensation. While this and other letters sent to the Board may have left something to be desired, under a simi-

■ We hold that under the evidence adduced in the record neither the Board nor the superior court erred in concluding that claimant's application for compensation was timely filed. Although the Board did not file a separate order pertaining to the employer's motion and its Findings and Award of February 18, 1964, omitted any specific findings in regard to the motion to dismiss, we hold that under the circumstances the Board's failure to enter any such order or findings does not require remand for the purpose of correction of this omission. Under our Administrative Procedure Act, a decision of the Board is required to contain findings of fact.[6] Nevertheless, we are of the opinion that no meaningful purpose would be served by a remand in this case. We are of the opinion that the Board's conclusion to award compensation to claimant clearly disclosed that the Board had determined the pending motion to dismiss adversely to Morrison-Knudsen. Although we have concluded that the Board's failure to file a separate order or to make any findings as to Morrison-Knudsen's motion to dismiss does not require a remand in this case, we are of the opinion that the better practice is, and in future cases coming before the Board, the Board should either file a separate order or in its decision make findings which disclose the basis for its determination of such motions.

The evidence in regard to this issue discloses that claimant sustained an accidental injury on July 14, 1960, while employed by Morrison-Knudsen as a laborer in Fairbanks, Alaska. Claimant sustained an injury to his back while lifting a large timber and then shortly thereafter lifting a bag of cement. As a result of this injury claimant was hospitalized for two weeks under the care of Dr. Paul B. Haggland. While hospitalized, claimant was placed in traction and received diathermy treatment for low back sprain. Subsequent to his release from hospitalization, claimant was periodically treated by Dr. Haggland until

lar Statute (33 U.S.C.A. § 913) an informal writing of the injured employee or his attorney which discloses an intention to assert a right to compensation, Employers Liability Assurance Corp. v. Donovan, 279 F.2d 76, 78 (1960, C.A.La.) or any correspondence from which it may reasonably be inferred that a claim for compensation is being made shall be interpreted as a claim. Young v. Hoage, [67 App.D.C. 150] 90 F.2d 395.

Reasonable inferences from the evidence by the Commissioner are not reviewable, Southern Stevedoring Co. v. Henderson, 175 F.2d 863, 865 (1949, C.A.5th Cir.). It was reasonable for the Board to infer that this was a claim.

Furthermore, the claim was timely under A.S. 23.30.105(a), which provides that a claim is timely made if;

'within two years after the employee has knowledge of the nature of his disability and its relation to his employment.'

From the time Dr. Haggland discharged claimant on October 15, 1960, until claimant was examined by Dr. Serena, and saw his report in July 1961, Mr. Vereen did not know what was wrong. The plaintiffs [sic] apparently did not know whether or not he was suffering from a compensable injury in November 1961 when they provided for further tests and hospitalization. However, they charge the defendant with knowledge they and their doctors were lacking. 'Knowledge' under the Statute is an ambiguous requirement. Mr. Vereen 'still doesn't know what is wrong.' The Board could have found that a reasonable man would not have known the nature of his disability until Dr. Serena prepared his June 1961 report, a copy of which is in the Board's file. Thus, the Board properly found the claim timely, under either theory discussed.

6. AS 44.62.510(a) of the Administrative Procedure Act provides in regard to the form and effect of a decision that:

A decision shall be written and shall contain findings of fact, a determination of the issues presented and the penalty, if any. The findings may be stated in the language of the pleadings or by reference to them.

Compare Manthey v. Collier, 367 P.2d 884, 889 (Alaska 1962), in regard to the necessity on the part of the Board to make findings.

October 15, 1960.[7] On this date Dr. Haggland discharged claimant from his care finding that claimant was able to resume work.

After being discharged from Dr. Haggland's care, claimant left Alaska to visit his parents in South Carolina and thereafter visited his relatives in the State of Connecticut. On January 20, 1961, during his visit in Connecticut, claimant again experienced back trouble which resulted in twelve days' hospitalization under the care of Dr. Frank Serena. Claimant was again placed in traction and given physiotherapy treatments. Dr. Serena continued to treat claimant until June 9, 1961. In a report dated June 22, 1961, Dr. Serena stated in part that:

> The patient has not progressed very well up to the present date. He still has marked limitation of motion, and still a great deal of discomfort over the lumbo-sacral region, and radiation down the entire length of the left leg.

> It is my opinion that this stems from the original injury and as a matter of fact, this patient has never recovered from the back injury sustained in Alaska.

> The patient was last seen on 6–9–61, and still has marked limitation of motion with severe back pain and radiation down the left leg—posteriorly. There was spasm of the erector spinal muscles, and quite a bit of distress. The patient had trouble sitting, walking, etc. The patient has had absolutely no beneficial results from physiotherapy, or from the lumbo-sacral corset.

> It is my feeling that this patient's 100 percent permanently disabled at this time, and will continue to remain so unless subjected to surgical procedure. This is now being contemplated.

My diagnosis is that of lumbo-sacral sprain, with herniated disc at lumbosacral junction—left side.

Additionally, the record discloses that at the May 16, 1963, hearing before the Board claimant testified that he didn't know what his disability was until approximately July of 1961. The record further shows that claimant filed an application for adjustment of claim (dated February 25, 1963) with the Board in February 1963. On the basis of the foregoing, we have concluded that the Board and the superior court could have properly concluded that claimant's February 25, 1963, application for adjustment of claim was filed within two years after claimant had (or a reasonable person in claimant's position should have acquired) "knowledge of the nature of his disability and its relation to his employment and after disablement."[8]

Unlike our previous compensation act which commenced the limitation period for filing a notice of claim from the date of "injury,"[9] or in contrast with other states' compensation acts which date the limitation period from the "accident,"[10] our present statute alternatively fixes the limitation period from the time the injured employee acquires knowledge of the nature of his disability and its relation to his employment.

Here the record discloses that claimant was a twenty-five year old laborer, had a twelfth grade education, and was a layman in respect to medical matters. There was substantial evidence in the record supporting the following: That claimant was injured on July 14, 1960, and was thereafter treated by Dr. Haggland who, on October 15, 1960, released claimant from his care as fit for work. That subsequent to his discharge claimant experienced further back difficulty in January of 1961 which resulted in hospitalization and treatment by Dr. Frank Serena. That it wasn't until

---

7. The record also indicates that claimant was hospitalized for a short period of time in September 1960.

8. AS 23.30.105(a) supra, page 537.

9. Supra note 2.

10. For a discussion of the various statutes in this area and the decisions thereunder, see 2 Larson, Workmen's Compensation, supra note 1, at 260–269.

Dr. Serena made his report on June 22, 1961, or shortly thereafter (in July of 1961) that claimant learned his then disabling back trouble was attributable to the July 14, 1960, injury.

■ Thus, on the basis of the evidence adduced and reasonable inferences therefrom, the record supports the conclusion that claimant did not know (and a reasonable person would not have known prior thereto) until approximately June or July of 1961 "the nature of his disability and its relation to his employment." In short, after claimant was discharged by Dr. Haggland in October of 1960 as fit for work, he did not acquire knowledge of the nature of his disability and its relation to his employment of July 14, 1960, until approximately the time Dr. Serena rendered his report of June 22, 1961. The following portion of the court's opinion in Great

American Indem. Co. v. Britton [11] is appropriate here:

Similarly, an intent to bar claims under such circumstances as are presented here cannot fairly be imputed to Congress. The employee duly sought and received medical advice, in line with his employer's instructions. That advice did not permit him, in good conscience, to file a claim. Ignorance based on completely erroneous advice from a physician can be even more profound—and more dangerous in its consequences— than ignorance based on no advice at all. Such advice effectively prevents a conscientious employee, or a lawyer regardful of the standards of his profession, from filing a claim for an award, at least until different advice of equal or higher standing is received. We cannot place a premium on the filing of claims which fly in the face of professional advice and ethical standards.[12]

11. 86 U.S.App.D.C. 44, 179 F.2d 60, 62 (1949). This involved a claim under the Longshoremen's & Harbor Workers' Compensation Act which contained an "injury" type limitation similar to the type of limitation found in Alaska's former compensation act.

12. See also General Acc. Fire & Life Assur. Corp. v. Hardin, 290 F.2d 862 (5th Cir. 1961); Patterson v. Bessemer Coal, Iron & Land Co., 192 F.Supp. 805 (E.D.Tenn. 1961).

In 2 Larson, Workmen's Compensation § 78.41, Professor Larson writes at 260-63:

Except under statutes expressly dating the limitations period from the 'accident', the time for notice or claim does not begin to run until the claimant, as a reasonable man, should recognize the nature, seriousness and probable compensable character of his injury or disease.

This rule has in most instances been worked out judicially under statutes making no express allowance for the claimant who excusably remains ignorant of his right to make a claim until it is too late. The kind of specific concession which appears in the Wisconsin statute, dating the limitations period from the 'date * * * employee * * * knew or ought to have known the nature of the disability and

its relation to the employment', is exceptional. The usual statute merely dates the period from the time of injury or disability, saying nothing about time of discovery of the nature of the condition. Yet the great majority of the courts have been sufficiently impressed with the acute unfairness of a literal application of this language to read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained.

In determining the time when claimant should have discovered the true nature of his affliction, he should be expected to display no greater diagnostic skill than any other uninformed layman confronted with the early symptoms of a progressive condition. *A fortiori*, his claim should not be barred when qualified physicians have been unable to present him with a diagnosis of his condition within the period of limitations.

Note that the period does not run until the claimant has reason to realize not only the gravity of his injury but also its relation to his work. If he has been told by the employer's physician, or even by his own personal physician, that his injury is non-industrial, he should be expected or encouraged to

542

On the basis of the foregoing, we conclude that claimant's February 25, 1963, application for adjustment of claims was, pursuant to AS 23.30.105(a), timely filed with the Board. In light of this conclusion, we consider it unnecessary to discuss any of the alternate grounds which claimant urges in support of the Board's and superior court's determinations in regard to this limitation issue.[13]

## AS TO THE ISSUE OF WHETHER THE BOARD'S FINDING OF TEMPORARY TOTAL DISABILITY IS SUPPORTED BY SUBSTANTIAL EVIDENCE

■ The Board in its Findings and Award of February 18, 1964, found that on July 14, 1960, claimant sustained an accidental injury to his back in the course of his employment which "caused temporary total disability that began on July 14, 1960, and has continued to the present date." As to the nature of claimant's injury, the Board found that:

Applicant suffered and still suffers from an acute and chronic lumbosacral sprain of the muscles and ligaments of the low back. This condition was caused by the industrial accident in Fairbanks

and applicant never recovered from the accident. * * *

A functional overlay was superimposed upon this condition. This was later classified as a conversion hysteria. * * The conversion hysteria was caused by the injury or by circumstances arising out of and following the injury. This condition has continued up to the present time.

Based in part on the foregoing, the Board concluded to award claimant compensation for temporary total disability

in the sum of $70.62 per week beginning July 14, 1960, to the date of this opinion and continuing until applicant is no longer disabled, until he is able to return to full time work, or until his condition is stabilized and the degree of permanent disability can be determined, * * *.

The Board's findings as to claimant's temporary total disability were subsequently affirmed by the superior court.[14] In this appeal appellants assert that the Board erred in regard to its finding of temporary total disability. Our review is limited to a determination of whether the Board's findings were supported by substantial evidence in the light of the whole record.[15] We

overrule his medical advisors and file a claim anyway. As Judge Washington observed:

'We cannot place a premium on the filing of claims which fly in the face of professional advice and ethical standards.'

13. As indicated previously, claimant argues, and the superior court agreed, that certain correspondence in the record from claimant's attorney to the Board constituted a timely claim for compensation within two years of the date of the last payment of compensation to claimant. In this appeal claimant additionally urges that the record supports applying estoppel against appellants from relying on AS 23.30.105(a)'s limitation period.
Note: Claimant did not argue in this appeal that the facts bring him within that portion of AS 23.30.105(a) which reads:
It is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the in-

jured employee has full right to claim as shall be determined by the board, time limitations notwithstanding.

14. The superior court in its Memorandum Opinion and Order dated March 19, 1965, stated in part:
The record shows that Mr. Vereen was injured on July 14, 1960. The incapacity resulting from this back injury, (whether physical or mental) has continued to this day.
The finding of temporary total disability is supported by the testimony and medical reports before the Board.

15. In Thornton v. Alaska Workmen's Compensation Bd., 411 P.2d 209 (Alaska, February 25, 1966), substantial evidence was defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See also Fischback v. Lynn, 407 P.2d 174, 177 (Alaska 1965); Watts v. Seward School Bd., 395 P.2d 372, 375 (Alaska 1964),

have concluded that the Board's findings as to claimant's temporary total disability are supported by substantial evidence under this test.

■ The evidence before the Board as to the nature of claimant's disability and its causal relation to the July 14, 1960, injury was conflicting. On review, it is not our province to weigh the evidence or to choose between competing inferences reasonably to be drawn from the evidence. Judge Holtzoff articulated this well established principle of review in compensation cases in Great American Indem. Co. v. Britton,[16] where, in an appeal under the Longshoremen's & Harbor Workers' Compensation Act, he wrote:

The only questions that the Court may consider are, first, whether the award is contrary to law; and second, whether the administrative findings of fact are supported by substantial evidence. * * * That countervailing evidence may have more probative value would not warrant the court in overruling the findings. So, too, the Court may not set aside the inferences drawn by the Administrator from the evidence that he chose to believe, if such inferences are reasonably possible and have a rational basis. * * * The Court may not substitute its own judgment for that of the Deputy Commissioner.[17]

We have already alluded to Dr. Serena's report of June 22, 1961, in which he con-

cluded that claimant's back condition was organic in nature, disabling, and causally related to the July 14, 1960, injury. Dr. Serena diagnosed claimant's condition as "that of a lumbosacral sprain, with herniated disc at lumbo sacral joint—left side." The Board also had before it the July 11, 1961, report of Dr. H. Howard Green, an orthopedic surgeon, in which it was stated:

This patient is suffering from an acute lumbosacral sprain which has now become recurrent and chronic. * * * It has, however, been a year since his original injury and he is still severely disabled despite treatment.

He is now convinced that he will never be well unless or until he has an operation. I presume the intended operation would be a lumbosacral fusion and he would probably improve with such a procedure.

In addition to the foregoing, there was also introduced into evidence the September 27, 1961, report of Dr. Frank Robinson, a neurosurgeon. Dr. Robinson's report stated in part:

Impression: 1. Musculoligamentous strain, lumbar, history.

2. Functional overlay superimposed upon (1).

The patient's clinical examination findings reveal rather obvious discrepancies as noted above which would point toward the presence of psychogenic overtone operative in this case. This indi-

vacated, 381 U.S. 126, 85 S.Ct. 1321, 14 L.Ed.2d 261 (1965); R.C.A. Serv. Co. v. Liggett, 394 P.2d 675, 677 (Alaska 1964); Alaska Alcoholic Beverages Control Bd. v. Malcolm, Inc., 391 P.2d 441 (Alaska 1964); Beylund v. Matanuska Valley Farmers Ass'n, 391 P.2d 176 (Alaska 1964); Forth v. Northern Stevedoring & Handling Corp., 385 P.2d 944 (Alaska 1963); Keiner v. City of Anchorage, 378 P.2d 406, 411 (Alaska 1963).

16. 186 F.Supp. 938, 940–941 (D.C.D.C. 1960), rev'd on other grounds, 110 U.S. App.D.C. 190, 290 F.2d 381, cert. denied, 368 U.S. 900, 82 S.Ct. 178, 7 L.Ed.2d 95 (1961).

17. Cf. the following authorities which were decided under the Longshoremen's & Harbor Workers' Compensation Act: Coscia v. Willard, 257 F.2d 105, 107 (2d Cir.), cert. denied, 358 U.S. 885, 79 S.Ct. 123, 3 L.Ed.2d 113 (1958); Wade v. Neuman, 230 F.Supp. 560, 562 (E.D.La.1964) (Court stated that the Deputy Commissioner was not bound to accept the opinion of any particular medical examiner.); Ennis v. O'Hearne, 124 F.Supp. 498, 500 (D.Md.1954), rev'd, 223 F.2d 755, 758 (4th Cir. 1955); Rothschild & Co. v. Marshall, 56 F.2d 415, 418 (W.D.Wash.1930) (It was stated that the mere fact that physicians were in disagreement would not afford a basis for reversal.).

vidual's extended disability is certainly more than one would attribute to lumbar strain. There is a possibility, of course, that he has an underlying intervertebral disc herniation with a superimposed functional overlay. In view of the equivocal clinical picture I feel that it would be advisable to obtain a lumbar myelogram for further diagnostic evaluation.

■ We are of the opinion that the reports of these three physicians, together with claimant's testimony, establishes that there is substantial evidence in the record in support of the Board's finding of an organic injury to claimant caused by the July 14, 1960, accident.[18]

■ Similarly, we are also of the opinion that there is substantial evidence supporting the Board's finding that claimant suffers from functional overlay, in the nature of conversion hysteria, caused by the July 14, 1960, accident. In this appeal, appellants concede that conversion hysteria (or traumatic neurosis) is compensable if causally related to the physical injury claimant suffered in July of 1960.[19] Here appellants contend that claimant did not establish the causal relation between his condition of conversion hysteria and the accident of July 14, 1960. Review of the reports of Doctors Robinson, Mulford, Haggland, Fish and Wichman clearly indicates that there is substantial evidence to support the Board's finding of conversion hysteria.[20] We are of the further view,

18. Note: When the matter was before the superior court, three additional doctor's reports were introduced into evidence over appellants' objections. Dr. Perry Mead's report of June 12, 1964, indicated that he had performed a diagnostic myelograph upon claimant which revealed

> a sign of a large protruded nucleus pulposus at the right L-4 intervertebral space level. * * * IMPRESSION: Protruded nucleus pulposus, right L-4, moderate-marked.

Dr. Wolfgang Klemperer also concluded that claimant's condition was organic. In a report dated September 22, 1964, he stated in part:

> He has shown over the last four years signs, symptoms, and complaints compatible with a disc herniation L-4 L-5 on the right. * * * it is my distinct recommendation that this patient have a laminectomy and disc removal L-4 L-5 on the right which should be productive of improvement and recovery.

Dr. Ira O. McLemore's report of September 23, 1964, concluded in part:

> It is my feeling that Mr. Vereen should have a very definite evaluation made of his mental condition in regard to an operative procedure. Certainly an operative procedure is indicated in the presence of a very definite filling defect on the right side between the fourth and fifth lumbar vertebrae.

The superior court admitted these three reports on the basis that AS 44.62.570(d) of the Administrative Procedure Act authorized the court to augment the record. This section provides:

> (d) The court may augment the agency record in whole or in part, or hold a hearing de novo. If the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing, the court may (1) enter judgment as provided in (e) of this section and remand the case to be reconsidered in the light of that evidence; or (2) admit the evidence at the appellate hearing without remanding the case.

Since we have determined that the Board's findings as to the organic nature of claimant's disability is supported by substantial evidence (exclusive of these three reports admitted by the superior court), we need not determine whether these reports were properly admitted by the superior court.

19. In 1 Larson, Workmen's Compensation § 42.22, at 616-617 (1965), it is stated:

> Conversely, when there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. Dozens of cases, involving almost every conceivable kind of neurotic or hysterical symptoms, have accepted this rule.

20. Dr. Robinson's report has already been alluded to. Dr. Haggland stated in a May 15, 1963, report that he could not find an organic basis for claimant's condition and, therefore, concluded that he was

and so hold, that the report of Dr. Robinson, when considered in connection with the testimony of Dr. James Lundquist pertaining to the causal nexus between the physical injury and claimant's condition of conversion hysteria supports the Board's conclusion that claimant's conversion hysteria "was caused by the injury or by circumstances arising out of and following the injury."

## AS TO THE ASSESSMENT OF A 10 PER CENT PENALTY

In its Findings and Award the Board ordered that:

* * * a penalty of 10% be added to all payments due after June 22, 1961, the date of Dr. Frank Serena's letter to Earnest L. Josem, at which time defendant had notice that applicant's disability had continued and had notice that compensation was due.

The superior court affirmed the Board's imposition of a 10 per cent penalty but concluded that the penalty should commence from October 17, 1960. In its Memorandum Opinion, the superior court stated:

A.S. 23.30.155(d) and (e) places a duty upon the employer to controvert the right to compensation. A letter in the file indicates the insurer was going to pay compensation. After October 17, 1960 the plaintiffs should either pay or controvert.

The 10% penalty is supported by substantial evidence.

AS 23.30.155(e) of our compensation act provides:

If any installment of compensation payable without an award is not paid within 14 days after it becomes due, as provided in (b) of this section, there shall be added to the unpaid installment an amount equal to 10 per cent of it, which shall be paid at the same time as, but in addition to, the installment, unless notice is filed under (d) of this section or unless the nonpayment is excused by the board after a showing by the employer that owing to conditions over which he had no control the installment could not be paid within the period prescribed for the payment.[21]

■■■ Claimant was released by Dr. Haggland on October 15, 1960, as able to resume work. The record does not substantiate a finding that appellants received a copy of Dr. Serena's report of June 22, 1961. Nor does the record support the superior court's conclusion that compensation was payable from October 17, 1960. In short, we are of the opinion that the record adduced below does not support the Board's imposition of a 10 per cent penalty pursuant to AS 23.30.155(e). Claimant's employer under the circumstances had

---

dealing with a "conversion type affliction"; Dr. Edwin Mulford, a neurosurgeon, concluded in his report of November 21, 1961, that claimant's condition was that of "conversion hysteria"; Dr. Winthrop Fish's report of July 18, 1963, states that "Repeated examinations and evaluations has failed to delineate a precise organic etiology. * * * Inconsistency in the subjective response to certain examination maneuvers suggest a psychogenic contribution to his symptoms." Dr. George B. Wichman's report of July 23, 1963, indicates that he was of the opinion the claimant's difficulties were of a "functional and not organic nature."

21. Subsections (b) and (d) of AS 23.30.155 provide as follows:
(b) The first installment of compensation becomes due on the 14th day

after the employer has knowledge of the injury or death. On this date all compensation then due shall be paid. Subsequent compensation shall be paid in installments, semimonthly, except where the board determines that payment in installments should be made monthly or at some other period.

(d) If the employer controverts the right to compensation he shall file with the board on or before the 14th day after he has knowledge of the alleged injury or death, a notice, in accordance with a form prescribed by the board, stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted.

the right to rely upon Dr. Haggland's October 15, 1960, medical report and certification of claimant's fitness for work and to thereafter controvert claimant's application for compensation.

For the reasons expressed herein the Board's assessment of a 10 per cent penalty and the superior court's affirmance thereof is reversed. In all other respects the Board's compensation order and the superior court's affirmance thereof is affirmed.