**LABORERS AND HOD CARRIERS UNION, LOCAL NO. 341, Appellant,**

v.

**Lillian GROOTHUIS et al., Appellees.**

**Lillian GROOTHUIS, Appellant,**

v.

**EMPLOYERS LIABILITY ASSURANCE CORPORATION, a foreign corporation, et al., Appellees.**

**Nos. 1435, 1459.**

Supreme Court of Alaska.

March 17, 1972.

Douglas D. Lottridge and David H. Thorsness, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellant.

Karl L. Walter, Jr. and Clark S. Gruening, of Groh, Benkert & Greene, Anchorage, for Lillian Groothuis.

Keith E. Brown and Charles Hagans, Anchorage, for Employers Liability Assurance Corp. and State of Alaska.

Before BONEY, C. J., and RABINO-WITZ and CONNOR, JJ.

## OPINION

CONNOR, Justice.

An unfortunate airplane crash of November 21, 1968, provides the background for this case. The plane crashed while carrying the members of the Governor's Employment Advisory Commission from Barrow, Alaska, to Inuvik, N. T., Canada, to inspect a model native town. Among those killed in the crash was Harold Groothuis who was chairman of the commission and business manager of Laborers & Hod Carriers Union, Local #341.

After the death of Harold Groothuis, his widow, Mrs. Lillian Groothuis, made application seeking workmen's compensation benefits for herself and a minor child. It was Mrs. Groothuis' contention that her husband was an employee of both the state and Local #341 at the time of his death.

The Alaska Workmen's Compensation Board reached a decision in which it found that the deceased was an employee of the State of Alaska but was not acting within the course and scope of his employment for Local #341 at the time of the crash. Thus, the board rejected the notion of joint or dual employment.

Both the state and Mrs. Groothuis appealed to the superior court from those parts of the board's decision that were ad-

verse to them. Acting on the state's motion for summary judgment, the superior court reversed the holding of the board and found that there was no joint employment because Mr. Groothuis was an employee acting in the course and scope of his employment with Local #341 and was not an employee of the State of Alaska.

We reverse and hold that, at the time of the fatal crash, Mr. Groothuis was a dual employee of both the state and of Local #341.

First, we will consider the decision as it relates to the question of Mr. Groothuis' employment by the state. After evaluating the many factors, especially the relevant statutes,[1] the board determined that there was a contract of employment between the decedent and the state, and that his death arose out of and in the course of such employment for the state. In finding the existence of the employment contract the board held that AS 44.19.490 made the subject matter of the contract sufficiently definite and certain,[2] that a letter from the Governor showed the existence of an offer, and that the filing of the oath of office by the decedent constituted an acceptance of the offer. There was also evidence tending to show the presence of the consideration element[3] and the element of control which is sometimes necessary to find an employment contract.[4]

Thus, there was substantial evidence upon which the board could have found the existence of a contract of employment either express or implied, a factor we have found necessary to the award of workmen's compensation benefits.[5]

In addition to the employment contract there is also substantial evidence to find the existence of an employment relationship between Mr. Groothuis and the State of Alaska under the "relative nature of the work" test employed by this court in Searfus v. Northern Gas Co., 472 P.2d 966, 969 (Alaska 1970). We rejected the use of the common law definition of "servant" as a definition of "employee" in Searfus because we felt that this was too narrow an approach to effectuate the purposes of the workmen's compensation statute.[6]

"Professor Larson states that the theory of compensation legislation is that the costs of all industrial accidents should be

---

1. The board relied on AS 44.19.460–.560 (Repealed by Executive Order No. 32, 1968) to show the statutory basis for the Employment Advisory Commission; AS 39.20.110, .180 relating to per diem to show compensation; and AS 23.30.020, .265, and .220 to demonstrate respectively that the Workmen's Compensation Act was relevant as part of every contract of employment, that Groothuis fell within the Act's definition of employee, and that the Act had a special provision for the computation of average weekly wage in situations similar to that facing the decedent's widow.

2. AS 44.19.490 enumerates the powers of the Employment Advisory Commission.

3. The parties briefed extensively the question of whether the per diem provided under AS 39.20.180 constituted wages under AS 23.30.265. However, we find that the definitions of the words *per diem* and *wages* are sufficiently similar that to make the existence of the employment relationship turn on this point would be unrealistic. *See* Blacks Law Dictionary (4th ed. 1968) 1293, 1750.

4. The board in its findings of fact stated that the Department of Labor exercised control "over the commission's budget, general direction, general supply of services and policy matters."

5. City of Seward v. Wisdom, 413 P.2d 931, 936–937 (Alaska 1966); Selid Construction Co. v. Guarantee Ins. Co., 355 P.2d 389 (Alaska 1960).

6. The control rationale for determining the employment relationship was developed by the courts as an aid to determining questions of tort liability under the doctrine of *respondeat superior*. Note, "The Test for the Employment Relationship Under Workmen's Compensation", 1 UCLA-Alaska L.Rev. 40 (1971). While the social policy of Alaska's Workmen's Compensation Act has dictated our use of a different test in that context, we still apply the control test along with other factors found in Restatement 2d, Agency, to determine the nature of the employment relationship in common law tort actions. Reader v. Ghemm Co., Inc., 490 P.2d 1200, 1203 (Alaska 1971).

borne by the consumer as a part of the cost of the product.

"From this principle, Professor Larson infers that 'the nature of the claimant's work in relation to the regular business of the employer' should be the test for applicability of workmen's compensation, rather than the master-servant test of control which has been developed to delimit the scope of a master's vicarious liability to third persons for torts committed by his servants." Searfus v. Northern Gas Co., supra, at 969.

Although the *Searfus* decision was cast in business terms, it is applicable in the instant case. The work engaged in by Mr. Groothuis was of a type which furthered the interests of the state. The costs of the accident should be borne, at least in part, by the state, for it has received the benefit of Mr. Groothuis' services.

■ While the evidence, as viewed by the board, was capable of varied interpretations, there was a rational basis to reach the decision that an employment relation existed between Mr. Groothuis and the State of Alaska. The crux of the problem presented in this part of the appeal can be found in the memorandum decision issued by the superior court where it is stated:

"I do not find that the actual relationship between the state and the members of the Commission *compels* the conclusion reached by the Alaska Workmen's Compensation Board . . . ." (emphasis added).

As we have emphasized before, it is only necessary that the board's decision be supported by substantial evidence, not that it be compelled under the facts as the only

possible solution to the problem. Keiner v. City of Anchorage, 378 P.2d 406, 411 (Alaska 1963). Our adherence to this rule has been consistent.[7]

The superior court accepted the state's assertion that the addition of AS 23.30.-242 [8] demonstrates an intent to change rather than clarify the preexisting law. This statute provides that members of state boards and commissions are to be considered employees for the purposes of the Workmen's Compensation Act. It was adopted almost immediately after the accident from which this case arose.

If we were to accept this assertion, it is conceivable that we would discourage the legislature from making necessary clarifying changes in statutes for fear that such changes might prejudice the rights of persons engaged in litigation over the statute as it read prior to amendment. This would be an undesirable result.

■ Although there may be a presumption that an amendment is intended to change legal rights rather than to interpret the preexisting law, the fact of amendment itself does not indicate whether the change is one of substance or of form.[9] Since the amendment was enacted during the controversy which arose as to the interpretation of the original act, it is just as logical to regard the amendment as a legislative clarification of the original language and not a substantial change.[10]

We now come to the question of Mr. Groothuis' relation to Local #341 at the time of the fatal crash. As we stated above, the board found that Mr. Groothuis' death did not arise out of and in the course of his employment with Local

7. Brown v. Northwest Airlines, Inc., 444 P.2d 529 (Alaska 1968); State Dept. of Highways v. Johns, 422 P.2d 855 (Alaska 1967); Alaska Redi-Mix, Inc. v. Alaska Workmen's Compensation Board, 417 P.2d 595 (Alaska 1966); Morrison-Knudsen Co. v. Vereen, 414 P.2d 536 (Alaska 1966); Thornton v. Alaska Workmen's Compensation Board, 411 P.2d 209 (Alaska 1966).

8. § 1 ch. 105 SLA 1969.

9. Sutherland, Statutes and Statutory Construction (Horack ed. 1943) § 1930 at 414.

10. *Id.* § 1931 at 418; Kaiser Cement and Gypsum Corp. v. State Tax Comm'n, 250 Or. 374, 443 P.2d 233, 235–236 (1968); *see* Hintz v. Zion Evangelical United Brethren Church, 13 Wis.2d 439, 109 N.W.2d 61, 64 (1961).

#341, and the superior court reversed this determination.

The local is correct in noting that the reviewing court is not to "weigh the evidence or choose between competing inferences reasonably to be drawn from the evidence".[11] But when the decision "rest[s] on erroneous legal foundations," [12] it cannot be supported on appeal to this court.[13]

If the question of whether Mr. Groothuis was acting in the course and scope of his employment with Local #341 is viewed narrowly, that is, to see if the decedent was performing specific tasks that could be traced to his union employment, we would rationally conclude that no compensation should be awarded. However, we feel it is necessary to construe the evidence in light of the presumption found in AS 23.30.-120(1), that in the absence of substantial evidence to the contrary a claim comes within the provisions of the statute. Cook v. Alaska Workmen's Compensation Board, 476 P.2d 29 (Alaska 1970). The superior court reversed the board because it felt that there was no substantial evidence to show that the death of Mrs. Groothuis' husband *did not* arise from his employment with Local #341. We are in agreement with that portion of the court's decision.

At the hearing before the board Mr. Robert McFarland, Secretary/Treasurer and Business Manager of Local #341, testified that Mr. Groothuis, at the time of his death, was an employee of Local #341. Mr. McFarland also testified that the labor movement supported legislation establishing the commission because the union felt that an improved employment picture in the native villages would tend to increase union membership. There was a "general concensus" that Mr. Groothuis' membership on the commission would be beneficial to Local #341. During the testimony of Mr.

McFarland it was developed that Mr. Groothuis conducted union business while on commission business by discussing "with various native leaders how native people could get into the union." Finally the testimony of Mr. McFarland established that Mr. Groothuis continued to receive union pay while on commission business, and that the time he spent on commission business was not considered vacation or leave time.

Relying on the presumption of coverage in AS 23.30.120(1), the superior court felt it was required to take a broader view of the question to determine if the death was compensable. The court did not feel that the test should be limited to specific or required duties of the employment but should include duties reasonably incidental to the employment.

■■ We agree that the law requires a broader view of the question than was taken by the board. As we have stated previously, death is compensable if it is connected with any of the incidents of the decedent's employment. Northern Corporation v. Saari, 409 P.2d 845, 846 (Alaska 1966). When the question is placed in terms of "any of the incidents of employment", it is clear that the board's decision cannot be sustained. Because the duties of decedent's position were broadly defined and included "anything that would inure to the benefit of the country", it would be difficult to find a rational basis upon which it could be asserted that he was not acting within the scope of his employment at the time of the crash.

Mrs. Groothuis urges in this appeal that her husband was either a joint or dual employee of the state and Local #341 at the time of his death. Before this issue can be decided it is necessary to determine what is meant by the terms "joint" or "dual" employment.

---

11. Wilson v. Erickson, 477 P.2d 998, 999 (Alaska 1970).

12. N.L.R.B. v. Babcock & Wilcox Co., 351 U.S. 105, 112, 76 S.Ct. 679, 100 L.Ed. 975 (1956).

13. *Id.*; Van Roy v. Industrial Comm'n, 5 Wis.2d 416, 92 N.W.2d 818, 823 (Wis. 1958).

■■ An employee can be said to be a joint employee when he simultaneously engages in work for more than one employer and the work performed for each employer is identical or nearly identical to that performed for the other employer.[14] While both employers are clearly liable when there is joint employment,[15] the case we are confronted with does not involve joint employment. There is no obvious identity between the work performed for the local and the work performed for the state by the decedent.

■■ The dual employment situation arises when an employee of two employers who is under the separate control of each performs services which are more closely related to the business of one than of the other.[16] When dual employment is found the employers will be liable for compensation either jointly or separately, depending upon whether it is possible to ascribe the service of the employee at the time of his injury or death to a particular employer or to several employers. The more difficult it is to determine whose interests the employee was furthering at the time of his injury, the greater is the likelihood of joint liability.[17]

If both employers are to be held jointly liable in the instant case, their liability must rest on a dual employment basis. While some cases have used a hairsplitting approach to uphold the liability of one employer when a dual employment relationship exists,[18] the better view is more flexible and provides for joint liability when there are only incidental services being performed for one of the employers while the employee is primarily on the business of the other employer. The case of Vance v. Hut Neckwear Co., 281 App.Div. 151, 118 N.Y.S.2d 327 (1952), illustrates the more flexible view. In *Vance* a salesman who worked for both a necktie company and a sportswear company was injured while traveling between customers to sell ties during the sportswear off-season. The claimant did not cease to be an employee of the sportswear company because sportswear was out of season, "so long as in traveling through his territory, he continued to keep in contact with the customers from whom he expected to obtain orders for sportswear in the appropriate season." 118 N.Y.S.2d at 334.

The case before us presents an even stronger argument for the application of the dual employment theory. While the evidence did not show that Mr. Groothuis was engaged in union business on the fatal trip, there was evidence presented to the board that he had engaged in union business on previous commission trips, that his union salary was continued while on commission business, that the union defined his duties as business manager very broadly, and that he often traveled around the state on union business. Thus, from the factual picture presented, it would be difficult to find that Mr. Groothuis was not conferring at least an incidental benefit on the local at the time of his death. We hold, therefore, that the appellant's husband was a dual employee of both the state and Local #341 at the time of his death, and that both employers are responsible for compensation in this case.

■ While Professor Larson advocates apportionment according to each employer's interest in the employee's services when possible, he feels that when no reason is found for varying the fraction, an equal sharing may be appropriate. Because it would be impossible to fairly apportion the benefit to each employer attributable to the labors of the decedent, it would also be impossible to apportion the burden under the circumstances of this case. An equal sharing is appropriate. The liability of both employers is primary,

14. 1A. Larson, The Law of Workmen's Compensation § 48.40 at 837.

15. *Id.*

16. *Id.*

17. *Id.* at 844–851.

18. *Id.* § 48.50 at 845; Hacker v. City of Potosi, 351 S.W.2d 760 (Mo.1961).

and as joint obligors they should share the obligation equally.[19]

This case is remanded to the superior court with instructions to remand it to the board for disposition in accordance with this opinion.

Reversed and remanded.

ERWIN, J., not participating.

19.  Ocean Accident & Guarantee Corp. v. United States Fidelity & Guaranty Co., 63 Ariz. 352, 162 P.2d 609 (1945) ; Larson § 48.50 at 850–51.