Robert KOLKMAN, Appellant,

v.

GREENS CREEK MINING CO., and Zurich Insurance/Crawford & Company, Appellees.

No. S–6675.

Supreme Court of Alaska.

April 18, 1997.

T.G. Batchelor, Batchelor, Brinkman & Pearson, Juneau, for Appellant.

Constance E. Livsey and Elizabeth D. Goudreau, Faulkner, Banfield, Doogan & Holmes, Anchorage, for Appellees.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS, and EASTAUGH, JJ., and CARPENETI, J. Pro Tem.*

## OPINION

CARPENETI, Justice Pro Tem.

## I. INTRODUCTION

Robert Kolkman challenges a decision of the Alaska Workers' Compensation Board (Board) denying him benefits. The Board found that he failed to give timely notice of his injury and failed to meet the requirements for an exception to the notice requirement. The superior court affirmed. Because we conclude that Kolkman met the requirements for an exception to the notice requirement,[1] we reverse the superior court's affirmance of the Board's decision and remand for the Board to determine the compensability of Kolkman's injury.

## II. FACTS AND PROCEEDINGS

Robert Kolkman had worked as a miner for over twenty years before Greens Creek Mining (Greens Creek) hired him to work in Alaska in August 1989. His duties at Greens Creek encompassed a wide variety of mining tasks. The work was very strenuous, and included moving rock with hand tools, carrying fifty-pound powder boxes, and drilling holes in the rock and loading them with dynamite.

Kolkman was a former smoker whose father had apparently died of a heart attack. Subsequent to Kolkman's heart attack which is described below, it was discovered that he

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. We acknowledge that our conclusion rests in substantial part on a change in the law as it existed at the time the superior court rendered its decision. Specifically, we today disapprove State v. Moore, 706 P.2d 311 (Alaska 1985), to the extent that it may be read to require that an employer have knowledge that the employee's injury is work-related to satisfy the exception of AS 23.30.100(d)(1).

had elevated cholesterol levels, a forty-five percent stenosis (narrowing) of the interior descending coronary artery and a fifty percent stenosis in the origin of the posterior descending artery.

On Friday, June 22, 1990, Kolkman was working the 4:00 p.m. to midnight shift. His activities included moving loose ore with a hand tool ("mucking") and driving a loader. Kolkman claims he began to feel tired and ill after the mucking. (He had moved about a ton of rock that day.) At the end of his shift, Kolkman took a shower, as was his practice, before returning by boat to Juneau. While in the shower, Kolkman claims he felt worse, felt nauseous, and began to sweat and feel pain in his arms. He described "pain that was so bad I didn't know what was wrong" and thought he might be suffering from a "charlie horse" in his arms or muscle spasms. He was sweating "real bad," and experienced nausea: "I felt like I wanted to throw up."

After he left the shower, the pain subsided a bit, and Kolkman began to dress for his trip home. Kolkman told a co-worker that he was feeling ill. The co-worker commented that he looked ill and suggested that Kolkman visit the emergency medical technicians (EMTs) at the mining facility, as did another co-worker. He did so, describing all of his symptoms to the EMTs. An EMT took Kolkman's blood pressure and pulse, which he found to be normal. The EMT offered to let Kolkman lie down, but Kolkman declined, preferring to take the bus and then a boat to return to his home in Juneau.[2]

Kolkman arrived home about 2:30 a.m., ate some popcorn, and went to bed. At that point, although Kolkman thought he was still feeling a "dull ache" in his arms, the nausea and sweating had gone. At 6:00 a.m., he got up and had some coffee, but then became nauseous and began vomiting. Then the pain came back to his arms. Kolkman then woke his wife, Pearl Kolkman, who took him to the emergency room at Bartlett Memorial Hospital.

Kolkman was placed in the care of Dr. William Cole, a specialist in internal medi-

cine. While in the coronary care unit, Kolkman suffered an anterior wall myocardial infarction, a heart attack, at 11:13 a.m. Saturday, June 23, 1990. Kolkman developed cardiac arrhythmia and required cardiac resuscitation. His condition was unstable, so that same day he was transferred by air ambulance to a Seattle hospital.

Shortly after Kolkman was taken to the Juneau hospital early Saturday morning, friends of the Kolkmans called Greens Creek to tell of Kolkman's hospitalization and to explain his absence from work. Two days later Pearl Kolkman spoke with Greens Creek management personnel, including the mine superintendent, the mill manager (who was her husband's supervisor), and the head of personnel, and told them of the heart attack. Pearl Kolkman was told everything would be "taken care of."

Kolkman was treated in Seattle by Dr. Milton English, a specialist in cardiovascular disease. His condition stabilized, but lack of oxygen to the heart had killed part of the heart and caused permanent damage. He remained in the Seattle hospital until July 4. He then returned to Juneau.

On September 4, Kolkman returned to work as a miner for Greens Creek. Dr. Cole gave Kolkman a work release which limited his physical activities because of the heart damage. He had to miss work from September 13 through September 25, for medical tests in Seattle.

In February 1991 Kolkman was called into a meeting with Greens Creek management about his absences and physical limitations. Kolkman soon became afraid that he would be fired because of his physical limitations, so during an April 22, 1991, visit with Dr. Cole, he asked about other types of work.

During this meeting, Dr. Cole told Kolkman that his heart attack might be work related. He suggested that Kolkman contact Dr. English, his treating cardiologist, to determine whether the heart attack entitled him to workers' compensation. On April 29,

---

2. The Greens Creek mine is located in a remote area, on Admiralty Island about forty minutes from Juneau by boat.

Kolkman consulted an attorney and requested clarification from Dr. Cole. Dr. Cole provided a letter, dated May 6, 1991, explaining the nature of the heart attack. On May 14, Kolkman wrote to Dr. English for confirmation of Dr. Cole's opinion that the heart attack was work related. Dr. English responded with a letter dated September 12, which gave his opinion that the heart attack was work related.

Kolkman filed a Report of Injury on June 11, 1991, and his attorney filed an Application for Adjustment of Claim (AAC) that same day. The AAC requested temporary total disability benefits from June 23, 1990 to September 20, 1990, permanent partial disability benefits, medical costs, vocational rehabilitation, and attorney's fees.

A hearing before the Alaska Workers' Compensation Board took place in January 1992. The Board heard testimony from the Kolkmans, Greens Creek supervisors, and Greens Creek's medical expert Dr. Preston, and received deposition testimony from Dr. Cole and Dr. English. By a 2-1 decision the Board found that Kolkman's claim was not barred by AS 23.30.100,[3] and that his heart attack was work-related and compensable. Greens Creek appealed.

The superior court issued a Memorandum of Decision and Order (Order) vacating the Board's decision. The Order affirmed the Board's decision regarding the admissibility of expert medical testimony, reversed the Board's determination that the presumption of compensability had not been rebutted by Greens Creek, and remanded for further consideration the determination that Kolkman's late filing was not time barred.

On remand, the Board found that Kolkman had not met the deadline for filing a claim. Thus, the Board held that the claim was barred unless it met one of the statutory exceptions. The Board found that Greens Creek "did not have knowledge of any facts about Employee's heart attack which would

have indicated to a reasonable conscientious manager that a potential workers' compensation claim may be involved." The Board also found that Greens Creek suffered prejudice from the delay. Thus, the Board found that Kolkman's failure to serve notice of injury within thirty days could not be excused under AS 23.30.100(d)(1). The Board also found that Kolkman offered no good reason for failing to provide notice, and thus did not meet the requirements for the exception found in AS 23.30.100(d)(2). Because the Board found the claim was time barred, it did not reach the issue of whether Kolkman presented sufficient evidence to prove his injury was compensable.

Kolkman appealed to the superior court. The superior court affirmed. The court found substantial evidence to support the Board's determination that Greens Creek did not know of the work-related nature of Kolkman's heart attack. The court noted that the Board appeared to have used the wrong time period for determining whether Greens Creek had been prejudiced. But the superior court also noted that a remand was unnecessary because Kolkman failed to show that Greens Creek knew of the work-related nature of his injury, and thus he could not take advantage of subsection .100(d)(1) even if Greens Creek had not been prejudiced. The superior court held that the exception in subsection .100(d)(2) gives the Board wide discretion, and that its decision in this case was not an abuse of that discretion. Finally, the court rejected Kolkman's argument that the Board had exceeded the authority granted on remand. This appeal followed.

## III. DISCUSSION

### A. Standard of Review

■ We independently review the superior court's decision. Because the superior court acted as an intermediate court of appeals, this court will not give deference to its ruling

3. AS 23.30.100 provides that the employee must give notice of an injury to the Board and his or her employer within thirty days. AS 23.30.100(a). But it also provides two exceptions that are at issue here. First, failure to give notice does not bar a claim if the employer "had knowledge of the injury" and "the board deter-

mines that the employer or carrier has not been prejudiced by failure to give notice." AS 23.30.100(d)(1). The other exception provides that a failure to give notice will not bar a claim "if the board excuses the failure on the ground that for some satisfactory reason notice could not be given." AS 23.30.100(d)(2).

in favor of the Board's decision. *See Schmidt v. Beeson Plumbing and Heating, Inc.*, 869 P.2d 1170, 1175 n. 6 (Alaska 1994) (citing *Hester v. State, Pub. Employees' Retirement Bd.*, 817 P.2d 472, 474 (Alaska 1991)).

▮▮▮ A factual decision of the Board is reviewed on the substantial evidence standard: the Board will be affirmed if "substantial evidence exists to support the Board's findings of fact." *Yahara v. Construction & Rigging, Inc.*, 851 P.2d 69, 72 (Alaska 1993) (citing *Morrison v. Afognak Logging, Inc.*, 768 P.2d 1139, 1141 (Alaska 1989)). "Substantial evidence is that which a reasonable mind, viewing the record as a whole, might accept as adequate to support the Board's decision. On review, the court does not independently reweigh the evidence." *Yahara*, 851 P.2d at 72 (citations omitted). In fact, "[t]he court should only determine whether such evidence exists, and not choose between competing inferences." *Municipality of Anchorage, Police and Fire Retirement Bd. v. Coffey*, 893 P.2d 722, 726 (Alaska 1995), (citing *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992), and *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 170 (Alaska 1974)).

B. *Whether Kolkman's Failure To Give Notice of His Injury Within 30 Days Should Be Excused Because Greens Creek Had Knowledge of the Injury and Was Not Prejudiced by the Failure To Give Notice*

Alaska Statute 23.30.100 provides that an employee who suffers a work-related injury must give notice to the board and his or her employer within thirty days.[4] AS 23.30.100(a). However, failure to give notice

does not bar a claim if the employer "had knowledge of the injury" and "the board determines that the employer or carrier has not been prejudiced by failure to give notice." AS 23.30.100(d)(1).

1. *Employer knowledge of the injury*

There is no doubt that Greens Creek knew that Kolkman had suffered a heart attack. Within a few days of the event, the mine superintendent, the mill manager (and Kolkman's supervisor) and the head of personnel all were advised of Kolkman's heart attack.

Following our decision in *State v. Moore*, 706 P.2d 311, 312 (Alaska 1985), however, simple knowledge on the employer's part has not been enough. In that case, the employer State of Alaska argued that " '[t]here must in addition be some knowledge of accompanying facts connecting the injury or illness with the employment ... indicating to a reasonably conscientious manager that the case might involve a potential compensation claim.' " *State v. Moore*, 706 P.2d 311, 312 (Alaska 1985) (quoting 3 A. Larson, *Workmen's Compensation Law* § 78.31(a), at 15–100 to 15–109 (1983)).[5] We analyzed that case with that additional requirement in mind.

It was this latter requirement which was at the heart of the dispute below. While the Board originally found that "members of Green's [sic] Creek management were aware of Employee's heart attack soon after it occurred," on remand from the superior court the Board expanded its finding to address whether the employer knew or should have known that the injury was work-related:

We now find that Employer did not have knowledge of any facts about Employee's heart attack which would have indicated to a reasonable conscientious manager that a

---

4. This court has found that the thirty-day limitation period is tolled "until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained." *Alaska State Hous. Auth. v. Sullivan*, 518 P.2d 759, 761 (Alaska 1974) (quoting 3 A. Larson, *The Law of Workmen's Compensation* § 78.41, at 60 (1971)).

5. *Moore* also noted that

it is not reasonable to expect an employer to launch an investigation every time a foreman hears someone complain of a pain or sees

someone get a bump, and such knowledge does not therefore satisfy the objectives of the notice statute. On the other hand, if the employer's representatives are aware of the circumstances surrounding the occurrence of the injury, and know as much about the symptoms as the claimant himself could report, the knowledge will be deemed sufficient even if the employer and employee both underestimate the seriousness of the injury.

*Moore*, 706 P.2d at 312 (quoting Larson, *supra*, at 15–113).

potential workers' compensation claim may be involved. . . .

The only incident of which we are aware that could have led Employer to believe that Employee's heart attack was related to his employment was Employee's visit to the EMT after the end of his shift. We find that Employee's brief visit to the EMT was not sufficient to indicate to the Green's [sic] Creek management that a potential workers' compensation claim could be involved.

It was this finding that the employer was not aware of the work-relatedness of the injury, based upon this court's opinion in *State v. Moore*, which the superior court reviewed to determine whether it was supported by substantial evidence. Finding that it was, the superior court affirmed the Board on this issue.

■ After a careful review of the question, we have determined that, to the extent that *State v. Moore* may be read to add a third requirement to the two-part test of the statute,[6] the case should be disapproved. The statute provides that failure to give notice will not be a bar where the employer has knowledge of the injury and has not been prejudiced by failure to receive notice. *State v. Moore* infers an additional requirement— that the employer must have, in addition to knowledge of the injury, knowledge of the work-relatedness of the injury. Adding the requirement of work-relatedness has a great potential to lead to injustice, for several reasons.

First, there is a short period for notice— thirty days—from the date when knowledge (or reason to know) that the injury is employment-related is acquired by the employee. In order to relieve the potential harshness of this rule, the legislature created the exceptions in AS 23.30.100(d). Any interpretation of the statutory exceptions to this notice requirement which creates an obstacle to the applicability of the exceptions carries the potential to bar meritorious claims.

Second, the employee's knowledge (or reason to know) of the work-relatedness of the injury is often gradually and undramatically acquired, and the employee may not realize that he or she has to take quick action in order to preserve his or her rights. Again, a restrictive interpretation of the exceptions to this rule carries a substantial possibility of injustice.

Third, it is often difficult to fix with precision the day from which the thirty-day notice requirement begins to run. A statutory exception designed to relieve the harsh effects of the short time requirements of AS 23.300.100 should not be interpreted so as to add a bar to the exception's applicability.

Fourth, AS 23.30.100(d)(1), which mentions knowledge of the injury or death but does not mention work-relatedness, stands in stark contrast to the section which was enacted with it and which immediately follows it, AS 23.30.105(a), which speaks of both knowledge of the injury *and* knowledge of its work-relatedness.[7] Given that these two subsections, enacted concurrently and placed next to each other in the statute, treat knowledge of work-relatedness so differently, the strong inference is that the legislature did not intend to add the requirement of knowledge of work-relatedness to the requirement of knowledge of the injury in subsection .100(d)(1).

■ Finally, this conclusion is consistent with the way in which the law generally treats notice of accident requirements in insurance policies. They operate to bar claims only when the intended recipient of the notice is prejudiced. *See Weaver Bros. v.*

6. A close reading of *State v. Moore* shows that the language from that case which suggested that that the employer must be aware of the work-relatedness of the injury was no more than dictum. In *Moore*, the employer argued that knowledge of the work-relatedness of the injury (on the employer's part) was necessary, and further asserted that it had no knowledge of the work-relatedness of the injury. After a review of the facts, this court found that the employer had such knowledge. We did not add the requirement of employer knowledge of work-relatedness; we merely found that if such knowledge was required, it was met on the facts of that case.

7. Subsection .105(a), which establishes time limits for filing claims, provides that the time period begins when the employee has "knowledge of the nature of the employee's disability *and its relation to the employment.*" (Emphasis added.)

*Chappel,* 684 P.2d 123, 125 (Alaska 1984). Larson notes that in many acts "there is a general provision that want of timely notice of injury shall not be a defense if it resulted in no prejudice to the employer." § 78.32(b), p. 15–188 (1996). Our legislature has decided to go one step beyond the acts mentioned by Larson (and one step beyond the approach taken by the common law with respect to notice requirements in insurance policies) and add a requirement which is in addition to lack of prejudice—knowledge of injury. Given that many states have very workable systems relying simply on lack of prejudice and that this is the common law result in the analogous area of insurance law, it is very difficult to justify a court-made addition to the second requirement of knowledge.

For all of these reasons, to the extent that *State v. Moore* may be read to have accepted the additional requirement of the employer's knowledge of the work-relatedness of the injury in determining whether the exception of AS 23.30.100(d)(1) applies, we disapprove that case.

### 2. *Employer prejudiced by late notice*

█ We must next consider whether substantial evidence supports the Board's determination that Greens Creek was prejudiced by the late filing. As the superior court noted, the Board's order indicated that it evaluated prejudice based on the time that passed between the date Kolkman suffered his heart attack (June 1990) and the date he gave written notice to his employer (June 1991). The superior court correctly pointed out that "[t]he board should have considered only the delay between the deadline for Kolkman's notice of injury (May 22, 1991) and the date when Kolkman finally gave notice (June 11, 1991) in regard to whether Greens Creek was prejudiced by late notice."

█ There was no evidence, much less substantial evidence, to support the conclusion that Greens Creek was prejudiced by the delay in notice between May 22, 1991 and June 11, 1991. The purpose of the notice

requirement is to enable the employer "to timely investigate the . . . injury and to afford the employer the opportunity to extend prompt medical treatment to prevent or minimize resulting disability." *Moore,* 706 P.2d at 312. In this case, because Kolkman did not know of the work-related nature of the injury until almost a year later, his obligation to provide notice did not arise until that time. *Sullivan, supra* n. 4, 518 P.2d at 761. Even if Kolkman had given notice by May 22, 1991 (within thirty days of his April 22, 1991 discovery of the work-related nature of the heart attack), no evidence suggested that Greens Creek would have been in a better position to investigate than it was on June 11, 1991 when Kolkman did file.[8]

In sum, we hold that Kolkman may not be denied the shelter of the subsection .100(d)(1) exception because he failed to file timely notice. Such action fails to properly apply the statute and does not serve the purpose of the statute.

### C . *Whether the Board's Decision that Kolkman Presented No Good Reason Why Notice Could Not Be Given Was Supported by Substantial Evidence*

Kolkman seeks relief in another exception to the formal notice requirement. Alaska Statute 23.30.100(d)(2) provides that a failure to give notice will not bar a claim "if the board excuses the failure on the ground that for some satisfactory reason notice could not be given." It is not necessary to reach this issue given our resolution of the prior issue.

### D. *Whether the Board Erred in Declining to Reach the Issue of the Compensability of Kolkman's Claim*

In light of its conclusion that Kolkman was not eligible for either exception to the notice requirement, the Board did not address the compensability issue in its latest Decision and Order. Because we have concluded that Kolkman was entitled to the exception to the notice requirement, the Board must reach the compensability issue.

---

**8.** Under these circumstances, there is no need to remand this aspect of the case—whether Greens Creek was prejudiced by the delay between May 22, 1991 and June 11, 1991—for further Board consideration.

## IV.  CONCLUSION

Because Greens Creek had knowledge of the injury and it suffered no prejudice from Kolkman's failure to file a timely notice of injury, we conclude that Kolkman's claim is not barred.  This matter is REMANDED to the superior court with directions to remand it to the Board for further proceedings consistent with this opinion.