Michael DAFERMO, Appellant
and Cross-Appellee,

v.

**MUNICIPALITY OF ANCHORAGE,**
Appellee and Cross-Appellant.

Nos. S–6864, S–7003.

Supreme Court of Alaska.

June 20, 1997.

Joseph A. Kalamarides, Kalamarides & Associates, Anchorage, for Appellant and Cross–Appellee.

Laurence Keyes, Russell, Tesche & Wagg, Anchorage, for Appellee and Cross–Appellant.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

COMPTON, Chief Justice.

## I. INTRODUCTION

Michael Dafermo filed a workers' compensation claim for vision problems caused by his computer work. The Board found his claim to be untimely and the superior court affirmed. We reverse.

## II. FACTS AND PROCEEDINGS

### A. Facts

Michael Dafermo worked for the Municipality of Anchorage (MOA) from February 1985 to May 1986 as a computer technical operator. He began to experience eye pain, blurred vision, and eye-focusing difficulties while working for MOA. He spoke with two of his supervisors, Al Korz and Keith Stout, about these problems. Korz recommended that Dafermo see Dr. Jon Shiesl, an eye physician, while Stout simply told Dafermo that the eye condition "sounds like a personal problem."

Dafermo quit his job with MOA in May 1986. The Alaska Workers' Compensation Board (Board) found that "one of the main reasons" for his leaving this employment was "his inability to resolve his visual difficulties," difficulties that Dafermo felt restricted his ability to work with computers.

Dafermo accepted Korz's recommendation and began seeing Dr. Shiesl about a year before he quit working for MOA. Dr. Shiesl prescribed special glasses in an attempt to resolve Dafermo's eye problems, but the glasses did not resolve the problems. Dafermo then left the state for several years. According to his testimony, his eye problems grew worse during that period. He returned to Alaska in 1988 and again saw Dr. Shiesl, and other physicians. Dafermo asserts that none of the doctors could diagnose the nature of his eye condition or identify its work-relatedness.

Dr. Janet Steinberg examined Dafermo in April 1991. She referred him to Dr. Thomas Bosley. Dafermo contends that he was not

aware of the nature of his disability or its work relatedness until he received a letter from Dr. Steinberg, dated September 3, 1991, which included a copy of Dr. Bosley's impression and diagnosis. Dr. Bosley did not specifically connect Dafermo's eye problems to his employment with MOA. However, he did suggest that Dafermo's work with computers might be a factor in his problems. He diagnosed a neurological dysfunction that corresponded with Dafermo's difficulty with visual and language functions, and observed that "[i]t seems most likely that [Dafermo] has become symptomatic in the relatively recent past because of the additional stress that he has put on his language system ... by taking a job as a computer programmer." In 1993 Dr. James Sheedy examined Dafermo, and more clearly and definitively diagnosed a link between Dafermo's eye problems and his work in front of a computer screen.

### B. *Proceedings*

Dafermo filed a notice of injury on November 1, 1991, and an application for adjustment of claim on November 11. MOA controverted Dafermo's claim. The Board found that Dafermo's claim was barred on both notice and claims period grounds.

First, the Board found that Dafermo failed to give notice of his injury within thirty days, as required by AS 23.30.100(a).[1] The Board accepted Dafermo's contention that the delivery of the Steinberg letter was "the first time he knew of a valid and accurate diagnosis of his condition and its work-relatedness." Based on this contention, the Board determined that the thirty-day statute of limitations had been suspended until Dafermo re-

ceived this letter. However, the Board then found that Dafermo failed to provide notice within thirty days after he received it.

The Board then considered whether Dafermo's failure to provide notice was excusable under AS 23.30.100(d)(1).[2] It determined that Dafermo orally notified supervisors Korz and Stout of his symptoms, but failed to provide any indication that he believed his problems were work-related. The Board found that MOA "had no way of knowing the employee's symptoms were work-related because the employee did not report them as such." The Board then determined that "the employee's failure to report his symptoms as potentially related to his computer work prejudiced the employer's ability to conduct an investigation into the matter." Because of this prejudice to MOA, the Board found the AS 23.30.100(d)(1) exception to the notice requirement inapplicable to the claim before it.

The Board also found that Dafermo did not bring the claim in a timely manner, pursuant to AS 23.30.105(a).[3] First, the Board determined that Dafermo did not sustain a latent injury that would postpone the running of the two-year claims period until the date he received the Bosley diagnosis through the Steinberg letter. The Board found that "in the exercise of reasonable diligence, the employee could have come to know the nature of his disability and its relation to his employment long before the diagnoses by Dr. Bosley and Dr. Sheedy." Because Dafermo "reasonably could have, but did not recognize the nature and seriousness of his problem or relate the problems to work prior to the examinations by these doctors," the Board

1. AS 23.30.100 provides:

(a) Notice of an injury or death in respect to which compensation is payable under this chapter shall be given within 30 days after the date of such injury or death to the board and to the employer.

2. AS 23.30.100 provides:

(d) Failure to give notice does not bar a claim under this chapter

(1) if the employer, an agent of the employer in charge of the business in the place where the injury occurred, or the carrier had knowledge of the injury or death and the board determines that the employer or carrier has

not been prejudiced by failure to give notice....

3. AS 23.30.105 provides:

(a) The right to compensation for disability under this chapter is barred unless a claim for it is filed within two years after the employee has knowledge of the nature of the employee's disability and its relation to the employment and after disablement.... It is additionally provided that, in the case of latent defects pertinent to and causing compensable disability, the injured employee has full right to claim as shall be determined by the board, time limitations notwithstanding.

---

determined that the period for bringing the claim had begun to run earlier, and had since expired.

Board Chairman M.R. Torgerson dissented from the Board's decision on both the notice and claims period issues. As to the notice issue, he focused on supervisor Stout's conclusion that the problems Dafermo described "were personal rather than work-related," and Stout's refusal to "take reasonable action to investigate the work-relatedness of them." Chairman Torgerson would have found that "Stout's failure to follow through with the employee's complaints negates ... any prejudice the employer might suffer because of the late filing of notice." As to the claims period issue, Torgerson would have found that Dafermo had sustained a latent injury, the probable compensable character of which he could not have recognized until he received Dr. Bosley's diagnosis. Because Dafermo filed the claim within two years of this diagnosis, Chairman Torgerson would hold it timely. Because of his conclusions regarding the notice and claims period issues, Torgerson would not have barred Dafermo's compensation claim.

Dafermo appealed the Board's decision to the superior court, which affirmed the decision of the Board based on the Board's resolution of the notice issue. It determined, however, that the Board's finding that the two-year claims period had run was not supported by substantial evidence and was unreasonable and arbitrary in light of the Board's finding that the running of the thirty-day notice period had been suspended until Dafermo received the Steinberg letter.

Dafermo appeals the Board's decision on the notice issue. MOA cross-appeals, claiming that the superior court should have affirmed the Board's finding that Dafermo's claim was not timely filed.

III. *DISCUSSION*

A. *Standard of Review*

■ All three of the issues on appeal concern the validity of findings made by the Board. This court reviews the Board's findings under the substantial evidence standard, and will not vacate findings of the Board that are supported by such evidence. *Alaska State Housing Auth. v. Sullivan*, 518 P.2d 759, 760 (Alaska 1974). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. ITT Arctic Servs.*, 577 P.2d 1044, 1046 (Alaska 1978). However, the question of whether the quantum of evidence is itself substantial is a legal question, which this court determines through an independent review of the evidence. *Fireman's Fund American Ins. Cos. v. Gomes*, 544 P.2d 1013, 1015 (Alaska 1976).

B. *The Board's Finding that Dafermo Failed to Provide Notice Within Thirty Days of His Receiving the Steinberg Letter Was Supported by Substantial Evidence.*

■ Dr. Steinberg's letter was dated September 3, 1991. Dafermo provided notice on November 1. While there was no evidence presented as to when he received the letter, Dafermo does acknowledge that he received the letter in fact. If he received the letter before October 2, Dafermo's notice would not be timely; if he received it on or after October 2, notice would be timely.

Despite the absence of any evidence as to when Dafermo actually received the letter, the fact that the letter was dated September 3 is evidence a reasonable mind might accept as adequate to support the conclusion that Dafermo did in fact receive it before October 2. As a medical professional, it is unlikely that Dr. Steinberg would draft a letter of such importance to a client, only to delay sending it off for the better part of a month. Likewise, while postal delays happen, it seems unlikely that such a delay would prevent Dafermo from receiving this information for so long. Because a reasonable person might accept the letter's date as adequate to support the conclusion that Dafermo received the letter before October 2, the Board's conclusion that Dafermo gave notice only after the thirty-day notice period had expired was supported by substantial evidence.

C. *The Board's Finding of Prejudice to the Employer Was Not Supported by Substantial Evidence.*

■ The Board's finding of prejudice was the basis for its conclusion that the AS

23.30.100(d)(1) exception to the notice requirement was not applicable. Alaska Statute 23.30.100(d)(1) creates an exception to the notice requirement when two conditions are met: (1) "the employer, an agent of the employer in charge of the business in the place where the injury occurred, or the carrier had knowledge of the injury or death," and (2) "the board determines that the employer or carrier has not been prejudiced by failure to give notice...." The Board found that the first of these two conditions had been met, since Korz and Stout were MOA's agents under AS 23.30.100(d)(1), and Dafermo notified them of his symptoms. However, the Board also found that Dafermo's failure to provide notice to MOA was prejudicial, because Dafermo failed to provide Korz and Stout with any indication that his eye problems might be work-related, thereby leaving MOA with no way of knowing of this potential work-relatedness.

Dafermo adopts the reasoning of Chairman Torgerson's dissent in arguing for the exception. He argues that Stout "failed to take reasonable action to investigate the work-relatedness" of the eye problems he mentioned, and that this "failure to follow through with Dafermo's complaints negates any prejudice the MOA might suffer because of the late filing of notice." The superior court, in affirming the Board's finding of prejudice, observed that "employees may report all kinds of physical or emotional conditions to supervisors," and "[s]upervisors should not be required to assume that a condition might be work-related, when the employee does not so indicate."

■ The flaw in the Board's reasoning is more fundamental than Chairman Torgerson's dissent would suggest, so we need not address the extent of an agent's responsibility to make inquiry regarding the work-relatedness of an employee's complaints.[4] Alaska Statute 23.30.100(d)(1) states that the exception it creates to the notice requirement will apply only if "the employer or carrier has not been prejudiced *by failure to give notice*"

(emphasis added). Any prejudice to MOA that was *not* caused by Dafermo's failure to give notice is not prejudice that renders the exception to the notice requirement inapplicable. The Board found that Dafermo was not required to provide notice until after he received the Steinberg letter. Thus, Dafermo's "failure to give notice" did not occur until thirty days had passed from his receiving this letter. Any prejudice to MOA resulting from his failure to give notice would have had to occur in the short interval between the date in October 1991 when the thirty-day notice period expired and November 1, 1991, the date on which he gave notice in fact. Any prejudice stemming from events during 1985 or 1986, the time Dafermo failed to indicate to Korz and Stout that he suspected his eye problems might be work-related, is irrelevant. Whatever prejudice that may have occurred then was not caused by Dafermo's failure to provide notice in October 1991.

■ Timely written notice of an injury is required because it lets the employer provide immediate medical diagnosis and treatment to minimize the seriousness of the injury, and because it facilitates the earliest possible investigation of the facts surrounding the injury. *State v. Moore*, 706 P.2d 311, 312 (Alaska 1985); *Sullivan*, 518 P.2d at 761; *Morrison–Knudsen Co. v. Vereen*, 414 P.2d 536, 537 (Alaska 1966). A failure to provide timely notice that impedes either of these two objectives prejudices the employer.

■ No substantial evidence could support a finding that Dafermo's failure to give notice in October 1991 prejudiced MOA's interests in either early investigation or prompt medical diagnosis and treatment. Years had passed since Dafermo first began having eye problems. Any prejudice that resulted from MOA's inability to promptly investigate Dafermo's claim and provide early diagnosis and treatment had long since been sustained by the time of Dafermo's failure to provide no-

---

4. We have recently held that knowledge of work-relatedness of the injury is not required. *Kolkman v. Greens Creek Mining Co.*, 936 P.2d 150, 156 (Alaska 1997) ("[T]o the extent that *State v. Moore* [706 P.2d 311 (Alaska 1985)] may be read

to have accepted the additional requirement of the employer's knowledge of the work-relatedness of the injury in determining whether the exception of AS 23.30.100(d)(1) applies, we disapprove that case.").

tice. Furthermore, after all these years, there is no evidence that a delay of a few additional days or weeks during October 1991 would have had any significant impact on MOA's ability to investigate, secure a diagnosis, or provide treatment.

The Board erred by using 1985 and 1986, the years of Dafermo's employment and his conversations with Korz and Stout, as the benchmark for determining whether MOA had been prejudiced by a failure to provide notice in October 1991. We reverse the Board's finding of prejudice because events in 1985 and 1986 cannot provide substantial evidence to support such a finding. Because of this, and because Dafermo's 1986 conversations with Korz and Stout gave "agent[s] of the employer in charge of the business in the place where the injury occurred ... knowledge of the injury," both the "knowledge" and "lack of prejudice" prongs of the AS 23.30.100(d)(1) exception to the notice requirement were satisfied. As a result, Dafermo's failure to provide notice within thirty days of his receipt of the Steinberg letter should have been excused.

D. *The Board's Finding that Dafermo's Claim Was Not Timely Was Not Supported by Substantial Evidence.*

■ We agree with Chairman Torgerson's conclusion that Dafermo's eye problems were a latent injury, and affirm the superior court's reversal of the Board on the claims period issue. In determining that the thirty-day notice period began to run upon Dafermo's receiving the Steinberg letter, the Board adopted Dafermo's contention that he received his first accurate medical diagnosis of his condition and its work-relatedness at that time. Once the Board adopted this contention, no evidence was introduced that could have supported a conclusion that the injury was not latent. The Board had already made findings that would compel the conclusion that Dafermo's injury was a latent defect.

■ "[A]n injury is latent so long as the claimant does not know, and in the exercise of reasonable diligence (taking into account his education, intelligence, and experience) would not have come to know, the nature of

his disability and its relation to his employment." *W.R. Grasle Co. v. Alaska Workmen's Comp. Bd.*, 517 P.2d 999, 1002 (Alaska 1974) (footnotes omitted). The Board determined that Dafermo is "an intelligent individual, with considerable computer experience and achievement in college classes," and therefore concluded that "taking into account the employee's education and intelligence, ... in the exercise of reasonable diligence, the employee could have come to know the nature of his disability and its relation to his employment long before the diagnoses by Dr. Bosley and Dr. Sheedy."

This conclusion fails to give adequate consideration to the fact that this court has "held that a layman 'should not be expected to diagnose a condition which physicians whom he had consulted ... failed to diagnose.'" *Id.* at 1004 (quoting *Employers' Liab. Assurance Corp. v. Bradshaw,* 417 P.2d 600, 601 (Alaska 1966)). The Board calculated the thirty-day notice period based upon its finding that Dafermo's prior medical examinations had failed to give him an accurate diagnosis of his condition and its work-relatedness. Once the Board made this finding, evidence regarding Dafermo's intelligence or education does not support the conclusion that the claims period began to run prior to an accurate diagnosis. The superior court correctly determined that the Board erred in this regard.

"[I]n the case of latent defects pertinent to and causing compensable disability, the injured employee has full right to claim as shall be determined by the board, time limitations notwithstanding." AS 23.30.105(a). "It appears clear ... that by 'defect' the legislature intended 'injury.'" *Grasle,* 517 P.2d at 1002. For claims based on a latent injury, the two-year statute of limitations is suspended during the full period of latency. However, such claims "must be filed within two years of actual or chargeable knowledge of the nature of the disability and its relation to employment." *Id.* at 1003. Because Dafermo's injury was latent, the claims period began to run only after Dafermo received the Steinberg letter. His November 11 Application for Adjustment of Claim fell well within this two-year limitations period.

## IV. CONCLUSION

We REVERSE the superior court's affirmance of the Board on the notice issue, but AFFIRM its determination that the Board erred in rejecting Dafermo's claim as untimely filed. We REMAND Dafermo's claim to the Board for a determination on its merits, since this claim was not barred by either AS 23.30.100 or 23.30.105.